**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| REAGENT FUND II, LP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No. 1:22-CV-12124-AK |
| v. | ) | |
| | ) | |
| LOTUS GUNWORKS OF | ) | |
| SOUTH FLORIDA, LLC, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE

**A. KELLEY, D.J.**

Plaintiff, Reagent Fund II, LP brings this action against Defendants Lotus Gunworks of South Florida, LLC, Lotus Gunworks/Naples, LLC, 3554 NW Federal Highway, LLC, and 2390 Vanderbilt Beach Road, LLC (together "Defendants"), over their alleged reneging on an agreement to sell Plaintiff two firearm dealerships in Florida. Plaintiff brings claims for breach of contract, breach of implied covenant of good faith and fair dealing, fraud in the inducement, violation of Mass. Gen. Laws. ch. 93A, and promissory estoppel.

Defendants move to dismiss this action, pursuant to Federal Rule of Civil Procedure 12(b), for lack of personal jurisdiction and improper venue, or in the alternative for transfer to the United States District Court for the Middle or Southern District of Florida. [Dkt. 19]. Plaintiff opposes this motion. [Dkt. 21].

Because the Court is unable to exercise personal jurisdiction over the Defendants here, Defendant's motion [19] is **GRANTED**.

1

I.      **BACKGROUND**

Plaintiff Reagent Fund II, LP, is a limited partnership that is formed under, and has its primary place of business in the Commonwealth of Massachusetts.  [Dkt. 1 ("Compl") at ¶ 3].  The Defendants are limited liability companies that are formed under, and have their principal place of business, in the State of Florida.  [Id. at ¶¶ 4-7].  Defendants are the owners of the real estate and business (the "Locations") that comprise two Lotus Gunworks branches in Naples and Jensen Beach, both of which are in Florida.  [Id. at ¶ 8].  Defendants are managed by C. Robert Marcum.  [Id. at ¶ 9].  Mark Daniels, CEO and Partner at Reagent Fund II, LP, handled negotiations on behalf of the Plaintiff. [Dkt. 22 ("Daniels Decl.") at ¶ 1, 6].  Daniels is based in Boston, Massachusetts.  [Id. at 5].  Marcum is based in Kentucky and spends considerable time in Utah.  [Id. at 12].

The Defendants do not have any locations, employees, property, or agents in Massachusetts, nor are they licensed to do business here.  [Dkt. 20-1 ("Marcum Decl.") at ¶¶ 4-9].  The Defendants do not actively solicit customers in Massachusetts nor do they regularly do business here.  [Id. at ¶ 10].

Defendants employed David Founds and Dean Cena to acted as brokers to sell the property and assets related to the Locations.  [Compl. at ¶ 10].  The brokers listed the details about the Locations publicly and engaged with several prospective buyers, none of whom, other than the Plaintiff, executed a letter of intent.  [Id. at ¶¶ 10-11].

Around December of 2021, while on his computer in Boston, Daniels came across the two Lotus Gunworks properties which were listed online on a website that advertised businesses listed for sale.  [Daniels Decl. at ¶ 7].  Plaintiff asserts that they sought to purchase the property for investment purposes and did not seek to develop a physical presence in Florida.  [Id. at ¶ 16].

Beginning on or about April 29, 2022, Plaintiff and the brokers engaged in discussions to purchase the Locations for $19.5 million.  [Compl. at ¶ 14].  Of that amount, the Defendants would finance 80% of the value of the real estate and furniture, fixtures, and equipment.  [Id. at ¶ 14].  Discussions between the parties continued around the confines of a letter of intent, including with Layne Hoekama, the Defendant's financial advisor.  [Id. at ¶¶ 15-19].  Hoekama is based in Indiana.  [Daniels Decl. at ¶ 12].  After a second letter of intent was shared, Mr. Marcum on behalf the Defendants responded to Plaintiff's proposal and agreed to a sale with a $15.5 million purchase price without backed financing.  [Compl. at ¶ 34].  A third letter of intent was shared and the parties continued to discuss the particular terms, including in regards to the handling of working capital items, cash on hand, inventory, accounts payable, layaway items, and outstanding gift cards.  [Id. at ¶¶ 36-37].  Eventually, Plaintiff sent a fifth and final letter of intent which was signed by Defendants.  [Id. at ¶¶ 56-58].  In the weeks that followed, Plaintiff took a number of steps to prepare for the transaction to be finalized, such as applying for the relevant Federal Firearms licenses and spending over $100,000 to meet the deadlines Defendants had set.  [Id. at ¶¶ 60-62].

On July 8, 2022, Hoekama sent a list of 59 outstanding issues regarding the proposed agreement, none of which related to the purchase price or the specifics of balance sheet issues. [Id. at ¶¶ 63-64].  Some of those issues were minor, such as issues with punctuation.  [Id. at ¶ 65].  The parties continued to discuss those issues, extending their exclusivity agreement to do so.  [Id. at ¶¶ 67-86].  On September 15, 2022, the parties and their counsel had a conference call where they reviewed the agreement and Defendants acknowledged agreement on all substantial terms. [Id. at ¶ 92].  On September 19, 2022, one day after the Defendants executed an extension of the exclusivity period, Hoekama told Plaintiff that the Defendants were no longer interested in

pursuing the sale of the Locations because they no longer were comfortable with the purchase price.  [Id. at ¶ 102].  Defendants wanted to renegotiate the agreement in a manner that would increase the purchase price by 20%, or $2 million.  [Id. at ¶¶ 104-106].

Throughout that failed five-month process, the parties communicated via telephone, mail, and email.  [Marcum Decl. at ¶ 15].  Those communications focused on the various proposals and the discussions over changes to those terms.  [Id. at ¶ 16].  At no point in this process did the Defendants visit Massachusetts.  [Id. at ¶ 17].  By the end of the parties' discussions, they had exchanged over 139 emails, at least a dozen phone calls, and numerous text messages.  [Daniels Decl. at ¶ 11].  During those phone calls, the Defendants were made aware that Plaintiff was based in Boston and Plaintiff listed their Boston address on all legal documentation that was exchanged.  [Id. at ¶ 14].   Daniels did visit Florida on his own on three different occasions during the negotiations but did not meet with any Lotus representatives while there.  [Id. at 13].

## II.    LEGAL STANDARD

A motion to dismiss for lack of personal jurisdiction, brought pursuant to Federal Rule of Civil Procedure 12(b)(2), challenges the ability of the court to assert judicial power over the defendant.  When personal jurisdiction is contested, the plaintiff has the "ultimate burden of showing by a preponderance of the evidence that jurisdiction exists."  Vapotherm, Inc. v. Santiago, 38 F.4th 252, 257 (1st Cir. 2022) (quoting Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010)).  To demonstrate this, the plaintiff should "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction."  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016).

The court reviews the pleadings, supplemental filings in the record, undisputed facts provided by the defendant, giving credence to plaintiff's version of genuinely contested facts. Id.

The plaintiff's burden of proof is "light" but nevertheless requires plaintiff to rely not on "mere allegations" alone but to point to specific facts in the record that support their claims. Jet Wine & Spirits, Inc. v. Bacardi & Co., 298 F.3d 1, 8 (1st Cir. 2002) (citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). The court "must accept the plaintiff's (properly documented) evidentiary proffers as true'…irrespective of whether the defendant disputes them" for the purposes of the motion. Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

## III.   DISCUSSION

### 1. Personal Jurisdiction

#### A.  Long-Arm Statute

To establish personal jurisdiction over a nonresident defendant in a diversity case, the plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment. C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014). While the First Circuit has sometimes treated Massachusetts' long-arm statute as coextensive with the Due Process Clause, the long-arm statute can impose more restrictive limits. Copia Commun., LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016). Under the long-arm statute, "[a] court may exercise personal jurisdiction over a person … as to a cause of action in law or equity arising from the person's … transacting any business in this commonwealth." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) (quoting United

Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st

Cir.1992)); Mass. Gen. Laws ch. 223A, § 3 ("Section 3A").

In order for jurisdiction to exist under Section 3A, the facts must demonstrate both that:

"(1) the defendant must have transacted business in Massachusetts, and (2) the plaintiff's claim

must have arisen from the defendant's transaction of such business." Power v. Connectweb

Techs., Inc., CV 22-10030-JGD, 2023 WL 36153, at *5 (D. Mass. Jan. 4, 2023) (quoting Tatro v.

Manor Care, Inc., 625 N.E.2d 549 (Mass. 1994)). "Transacting any business" is understood

broadly and the Court must look to whether Defendant "attempted to participate in the

commonwealth's economic life." Cossart, 804 F.3d at 18.  However, "isolated transactions

unaccompanied by 'purposeful intent' on the part of [a] defendant[ ] and having only a 'slight

effect on the commerce of the Commonwealth' are not enough to support jurisdiction" under

Section 3A.  Sun Life Assurance Co. of Canada v. Sun Bancorp, Inc., 946 F. Supp. 2d 182, 188

(D. Mass. 2012) (quoting Intech, Inc. v. Triple "C" Marine Salvage, Inc., N.E.2d 194, 198

(2005)) (additional quotations and citation omitted); See e.g. Roberts v. Legendary Marine Sales,

857 N.E.2d 1089, 1091 (2006) (Holding that sale of a single boat by a Florida dealership to a

Massachusetts buyer did not amount to "transacting any business" in Massachusetts because it

was an isolated transaction).

Here, Plaintiff's allegations are insufficient to establish that the Defendants "transact[ed]

any business" within the Commonwealth.  Mass. Gen. Laws ch. 223A, § 3.  Outside of the

attempted sale of the Locations to a Massachusetts-based purchaser, Defendants have no

economic interactions or presence in the Commonwealth at all.  [Marcum Decl. at ¶¶ 4-10].  The

properties whose disputed purchase is at the heart of this matter are both in Florida.  [Compl. at ¶

8].  There is no indication that the parties contemplated any type of ongoing arrangement or

dealings that would have continued after their sale.  As such, the Defendants' attempted sale more closely resembles an "isolated transaction" rather than an effort on their part "to participate in the commonwealth's economic life."  See Cossart, 804 F.3d at 18; Sun Life Assurance Co., 946 F. Supp. 2d at 188.

Plaintiff highlights the fact that the Defendants exchanged over a hundred emails, dozens of phone calls, and multiple proposals with their Massachusetts-based counterparts during the multi-month process in the lead up to the purchase.  [Daniels Decl. at ¶ 11].  Such repeated calls and emails sent by an out of state defendant to a Massachusetts-based plaintiff can constitute "transacting business" in the Commonwealth, even without the Defendants having any physical presence in the forum.  Workgroup Tech. Corp. v. MGM Grand Hotel, 246 F. Supp. 2d 102, 110 (D. Mass. 2003) (finding requirements of long-arm statute satisfied by communications negotiating terms of contract between Massachusetts-based corporation and Las Vegas hotel hosting its conference).  However, this may only be in instances wherein the Defendant's contacts with Massachusetts are "instrumental (not incidental) in the formation of the contract in dispute."  Id. at 111 (citing Lyle Richards, Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 113 (1st Cir. 1997)).

In Lyle, the defendants' contacts were considered "incidental" because most of the parties' performance under the agreement was to be rendered outside Massachusetts, none of the plaintiff's obligations were required to have been performed in Massachusetts, and the bulk of plaintiff's contractual commitments actions were expected to be performed outside the United States.  Id.  Whatever "various attendant chores" were performed in Massachusetts were insufficient for the defendants' conduct to be considered "transacting business" in the Commonwealth.  Id.  The scenario is the same here as all of the significant performance the

parties' alleged agreement contained was to be performed in Florida.  In contrast, none of the parties' obligations needed to be performed in Massachusetts.  [Dkt. 21-7].  The letter of intent the Plaintiff provides make no mention of Massachusetts, apart from listing the address of the buyer.  [Id.].  As such, the Defendants' contacts with Massachusetts are considered "incidental" rather than instrumental to the contract's formation.

Plaintiff relies upon other cases wherein out of state communications met the "transacting business" requirement.  Each of those cases differs in keyways from the facts here.  In those cases, the Defendants' Massachusetts-based contacts were more significant, contemplated longer term arrangements, and the parties' contemplated performance included actions that had to be performed in Massachusetts.  See Pesmel N. Am., LLC v. Caraustar Indus., 754 F. Supp. 2d 168, 173 (D. Mass. 2010) (finding Defendant transacted business in Massachusetts where defendant sent payments to Massachusetts and agreement required Plaintiff to use its Massachusetts facility to mobilize parts and labor for out of state Defendant); Travelers Supply, Inc. v. Hilton Head Laboratories, Inc., CIV. A. 07-30175-KPN, 2008 WL 5533434 at *4 (D. Mass. Dec. 23, 2008) (finding long-arm statute's requirements were met where Defendant worked with Massachusetts-based agent to attempt purchase of Defendant's out of state business, the parties exchanged documents related to the sale, and Defendant was already selling products in Massachusetts); Shipley Co. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990) (finding "transacting business" requirement met where Defendants were out of state employees of a company based in Massachusetts who regularly communicated with Massachusetts-based plaintiffs and made regular trips to the Commonwealth); Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1 (1979) (finding "transacting business" requirement met where out of state defendant was sending appraisal reports over the course of a year about plaintiffs' refineries in Massachusetts, in

exchange for payment, which it knew plaintiff was relying upon for major business undertakings in the Commonwealth).

Since the Defendants' contacts in Massachusetts are more aptly characterized as incidental rather than instrumental to the parties contemplated contract, their contacts cannot meet the requirements of Section 3A.[1]  As Plaintiff has not articulated any other basis for why the Defendants are subject to the long arm statute, the Court cannot exercise personal jurisdiction over them.  Mass. Gen. Laws ch. 223A, § 3; [Dkt. 21-1 at 5-7].

## B.  Due process

Given that there are insufficient contacts to justify a finding of personal jurisdiction under the Massachusetts long-arm statute, the Court need not address whether jurisdiction would be authorized under the limits placed by the due process clause.  Sun Life Assur., 946 F. Supp. 2d at 190.  Even if the Plaintiff could satisfy the requirements of the long-arm statute though, the Court would arrive at the same result.  Id.  The Due Process Clause requires that the out-of-state defendant over whom Massachusetts is exercising jurisdiction have sufficient "minimum contacts" with the state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The analysis of whether the out-of-state defendant has sufficient minimum contacts to establish specific jurisdiction is separated into three categories: (1) relatedness; (2) purposeful availment; and (3) reasonableness.[2] Vapotherm, Inc. v. Santiago, 38 F.4th 252, 258 (1st Cir. 2022).

---

[1] Because the Court has determined that Plaintiff failed to establish that Defendant's actions constituted "transacting any business in this commonwealth", it need not reach the second requirement regarding whether the cause of action arose from Defendant's contacts.  Tatro v. Manor Care, Inc., 625 N.E.2d 549 (Mass. 1994).

[2] Only specific jurisdiction is relevant here and an inquiry into general jurisdiction is unnecessary. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at

The inquiry into Relatedness considers whether the Plaintiff has sufficiently established that its claims "directly arise out of or relate[ ] to the defendant's forum-state activities." Id. (quoting Scottsdale Cap. Advisors Corp. v. The Deal, LLC, 887 F.3d 17, 20 (1st Cir. 2018)). The Defendants do not advance any argument challenging the lack of relatedness of their contacts in Massachusetts to the case at hand.  [See Dkt. 20; Dkt. 25].  Accordingly, the Court will assume that the action here arises from and is related to the Defendants' actions in this forum.

The Defendants focus their arguments on the purposeful availment prong, arguing that because they did not initiate any business in Massachusetts and because the contract was primarily to be performed in Florida, they did not deliberately target their behavior to this forum. [Dkt. 20 at 14].  The Plaintiff though argues that the Defendants actions, through their engagement in extensive negotiations with a Massachusetts-based party and subsequent breach of contract, made it foreseeable that they could be hauled into court in Massachusetts. [Dkt. 21-1 at 7].

Purposeful availment is determined by the "two key focal points" of voluntariness and foreseeability.  Vapotherm, Inc., 38 F.4th at 263 (quoting Adelson, 510 F.3d at 48). Voluntariness turns on whether the contacts are voluntary rather than being based on the unilateral actions of another party.  Id.  Foreseeability is assessed based on whether the defendants' contacts in the forum state give sufficient notice such that they "could 'reasonably anticipate being haled into court there.'"  Id. at 262 (quoting World–Wide Volkswagen Corp. v.

_____

home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting Int'l Shoe Co., 326 U.S. at 317 (1945)). To be "at home" in the forum state, "its continuous and substantial contacts with a forum State must be akin to those of a local enterprise that actually is 'at home' in the State" or "comparable to a domestic enterprise in that State."  Daimler AG v. Bauman, 571 U.S. 117, 133 n.11, 152 (2014). A court may only exercise general jurisdiction over an out-of-state corporation in "exceptional case[s]."  Id. at 139 n.19.  Here, Plaintiff makes no argument as to why the Defendants would be subject to general jurisdiction in Massachusetts and none of the facts Plaintiff provides suggest that the Defendants would be "at home" in Massachusetts.

Woodson, 444 U.S. 286, 297 (1980)).  The Court must look at factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining purposeful availment.  Burger King Corp. v. Rudzewicz, 471 U.S. 463, 479 (1985).

The Plaintiff's allegations are not sufficient here because the connection the Defendants have to Massachusetts, even if the contract for sale existed with the Plaintiff, it is too remote to demonstrate purposeful availment.  The primary evidence the Plaintiff highlights is the alleged agreement itself.  [Dkt. 21-1 at 10].  However, that agreement alone, even if it was knowingly entered into with a Massachusetts-based party, does not constitute purposeful availment.  See Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 933-34 (1st Cir. 1985) ("the fact that a nonresident enters into a single commercial contract with a resident of the forum state is not necessarily sufficient to meet the constitutional minimum for jurisdiction").  Such agreements can demonstrate purposeful availment when accompanied by additional factors, such as "a purposeful decision by the nonresident to "participate" in the local economy and to avail itself of the benefits and protections of the forum."  Id. at 934.  The agreement here concerned the one-time purchase of the Locations in Florida and did not envision any further relationship that would have tied the Defendants to Massachusetts.  See Cf. Burger King Corp., 471 U.S. at 480 (finding personal jurisdiction, in part, because Defendant knew they were affiliating themselves with Florida enterprise, the parties' entered into a multi-year contract that emphasized that performance would be supervised in Florida).  The Defendants' actions in this "isolated act" do not appear to represent an availment "of the benefits of transacting business in Massachusetts" and any economic impact on Massachusetts that flowed from the Florida-based purchase can at best be described as minimal.  See Bond Leather Co., 764 F.2d at 934.

It is also notable that the Defendants' contacts with Massachusetts were first initiated by the Plaintiff rather than being sought out by the Defendants.  [See Daniels Decl. at ¶ 7; Compl. at ¶ 12]; Nicholas v. Buchanan, 806 F.2d 305, 307 (1st Cir. 1986); Adams, 601 F.3d at 7; Vapotherm, 38 F.4th at 263.  The fact that the Locations were for sale on a website that was publicly accessible in Massachusetts (and globally), without more, is not sufficient to show purposeful availment. [Compl. at 10-11]; Cossaboon v. Maine Medical Center, 600 F.3d 25, 35 (1st Cir. 2010) (finding that a website which was available to New Hampshire residents but was not purposefully directed towards them was insufficient, without more, to demonstrate purposeful availment); Sun Life Assur., 946 F. Supp. 2d at 191 (finding that a website was insufficient to establish purposeful availment because it was available to anyone with internet access, did not target Massachusetts' residents, and contained "generic advertising" that was no more likely to solicit customers in Massachusetts than anywhere else.")

Plaintiff highlights the over one hundred emails, dozen phone calls, and numerous text messages that were exchanged between the parties throughout the negotiations, but this is also insufficient.  [Daniels Decl. at ¶ 11].  Such communications exchanged between parties that are negotiating a contract across state lines do not, on their own, establish purposeful availment. Nicholas v. Buchanan, 806 F.2d at 307.

While Plaintiff points to other cases in which numerous communications throughout the negotiation of a contract demonstrated purposeful availment, in each of those instances, the out-of-state party's communications were accompanied by additional substantive acts establishing their ties to Massachusetts. See Cf. eIQnetworks, Inc. v. BHI Advanced Internet Sols., Inc., 726 F. Supp. 2d 26, 28-30, 35 (D. Mass. 2010) (finding purposeful availment where, in addition to interstate communication, payments were made to plaintiff over an 18 month period and

defendant intended to continue selling its internet services in Massachusetts including to other clients); Nasuni Corp. v. ownCloud GMBH, 607 F. Supp. 3d 82 (D. Mass. 2022) (finding purposeful availment because, in addition to communications related to contract negotiations, defendant had also conducted a training event, overseen a pilot project, and received payment in Massachusetts); Pesmel N. Am., 754 F. Supp. 2d at 174 (finding purposeful availment, in part, because "[t]he contractual relationship between the parties was intended to last for several years").

The final requirement Plaintiff must meet is for the exercise of jurisdiction over the defendant to be fair and reasonable.  Vapotherm, Inc., 38 F.4th at 263.  Since the Plaintiff here did not make a prima facie case showing as to purposeful availment, the Court does not need to reach the reasonableness analysis. See id.

**2. Transfer**

Where the Court cannot exercise personal jurisdiction, federal law permits it to transfer a case "if it is in the interest of justice … to any other such court in which the action ... could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631; see Federal Home Loan Bk. of Bos. v. Moody's Corp., 821 F.3d 102, 109 (1st Cir. 2016) (holding that Section 1631 authorizes transfer where transferring court lacks personal jurisdiction), abrogated on other grounds, Lightfoot v. Cendant Mortg. Corp., 580 U.S. 82 (2017).  When determining whether transfer is appropriate, the Court looks to whether the case could have been brought in another federal court, whether the statute of limitations has run, and whether the case is "frivolous or brought in bad faith."  Azumi LLC v. Lott & Fischer, PL, 621 F. Supp. 3d 219, 225 (D. Mass. 2022).

The Defendants here have indicated their consent to have this case transferred to the United States District Court of the Middle or Southern District of Florida.  [Dkt. 19].  Plaintiff opposed transfer as being unnecessary and has indicated no preference between either Florida District.  [Dkt. 21].  Now that the Court has made a determination on personal jurisdiction, if Plaintiff wishes to indicate a preference for where the case should be transferred, it may do so in a supplemental filing within seven (7) days of this ruling.  Otherwise, the action will be dismissed.

## IV.    CONCLUSION

For the foregoing reason, the Defendants' motion [19] is **GRANTED**.  The Court will make a final determination on whether the case will be transferred or dismissed following any supplemental filing by Plaintiff within seven (7) days of this order.

**SO ORDERED.**

Dated: August 15, 2023                                          /s/ Angel Kelley_____
                                                               Hon. Angel Kelley
                                                               United States District Judge